UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALVILA CARTER,** | ) NO. EDCV 05-00704-MAN |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ORDER |
| **MICHAEL J. ASTRUE,** **Commissioner of the** **Social Security Administration,** | ) |
| Defendant. | ) |

Plaintiff filed a Complaint on August 3, 2005, seeking review of the denial by the Social Security Commissioner ("Commissioner")[1] of an award of disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). On August 18, 2005, the parties consented to proceed before the undersigned, pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on April 24, 2006, in which:

---

[1] Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted in place of Commissioner Joanne B. Barnhart as the Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff seeks an order vacating the Commissioner's decision denying benefits and remanding the case to the Commissioner for a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed his applications for DIB and SSI on April 4, 2002. (Administrative Record ("A.R.") 74-76, 334-36.) Plaintiff claims to have been disabled since January 5, 1997, due to a back impairment, migraine headaches, problems with his left ankle, and depression. (A.R. 12, 89.) Plaintiff has work experience as a general laborer. (A.R. 13.)

The Commissioner denied Plaintiff's claims for benefits initially and upon reconsideration. (A.R. 5-11.) Following Plaintiff's request for an administrative hearing, there were three hearings conducted before Administrative Law Judge Mason D. Harrell, Jr. ("ALJ").

The first of these hearings was held on September 3, 2003. (A.R. 350-72.) At that hearing, testimony was given only by Plaintiff, who was not represented by counsel.[2] (A.R. 22-40.) The ALJ continued the

---

[2] Because Plaintiff was not represented by counsel at the first and second ALJ hearings, the ALJ had a heightened duty to develop the record. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001)(the ALJ's duty to develop the record fully and fairly is heightened when the claimant is unrepresented and, particularly, when the claimant is mentally ill). An ALJ may "discharge" his duty in various ways, such as: "subpoenaing the claimant's physicians, submitting questions to the

case to develop the record further.[3] (A.R. 371.)

After further development of the record, a second hearing was held on January 21, 2004. At that hearing, testimony was given by Plaintiff, who again was not represented by counsel, and by two medical experts, Dr. Samuel Landau, an internist, and Dr. William Cable, a neurologist. (A.R. 374-92.) That hearing also was continued to develop the record further.[4] (A.R. 391-92.)

After further developing the record, the ALJ conducted a third and final hearing on May 27, 2004. (A.R. 393-414.) The following individuals appeared at that hearing: Plaintiff, who was then and is now represented by counsel, William Kuntz; Dr. Craig Rath, a medical expert and clinical psychologist; and Sandra Fioretti, a vocational expert ("VE"). Testimony was given by the medical expert and the VE.

On July 21, 2004, the ALJ issued a decision denying Plaintiff's claims, and the Appeals Council subsequently denied the request for review. (A.R. 12-17, 5-8.)

---

claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.* at 1150; *see also* Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999); Smolen, 80 F.3d at 1288.

[3] The ALJ continued the first hearing to obtain Plaintiff's treating records from Mesa Counseling Clinic. (A.R. 370-71.)

[4] This Court notes that the ALJ, in forming his decision, did not rely on the testimony given by Dr. Cable, because his testimony was based on an inadequately developed medical record. (A.R. 14.) Following Dr. Cable's suggestion during his testimony at the second hearing, the ALJ continued the case to obtain additional records from Dr. Mejia, a physician at the Mesa Counseling Clinic. (A.R. 387.)

3

**SUMMARY OF ADMINISTRATIVE DECISION**

In his July 21, 2004 written decision, the ALJ found that Plaintiff: has not engaged in substantial gainful activity since 2001 (A.R. 16); is a "younger individual," pursuant to 20 C.F.R. § 416.963 (*id.*); has an eleventh grade education (*id.*); and has "severe" physical and mental impairments, but does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 (A.R. 13-16).

The ALJ found that Plaintiff had the following residual functional capacity:

> [Plaintiff has] the physical residual functional capacity for lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking 2 hours out of a given 8 hour period and sitting 6 hours out of a given 8 hour period provided normal breaks with no work requiring the climbing of ladders, work at unprotected heights or balancing. [Plaintiff] is unable to perform work activity requiring him to operate motorized equipment and is unable to operate foot pedals or controls with his left lower extremity. Mentally, [Plaintiff] is precluded from work requiring high production quotas, work requiring close supervision and work involving between simple repetitive tasks and less than complex tasks. [Plaintiff] is able to tolerate normal interactions with peers and supervisors, typical or moderate supervision and non-stressful interactions with the general public.

(A.R. 13.)

The ALJ found that Plaintiff's subjective complaints "failed to credibly establish functional limitations greater than that found herein." (A.R. 16.) The ALJ also found that Plaintiff's testimony regarding drug and alcohol abuse was "not credible." (*Id*.) Using Medical-Vocational Guidelines Rules 202.17[5] and 201.24[6] as a framework and relying upon the VE's testimony, the ALJ found that Plaintiff can perform a significant number of jobs in the national economy, such as the jobs of a "bench assembler," "small products assembler," and "assembler of buttons and notions performed at the sedentary level of exertion." (A.R. 15-16.)

Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (A.R. 16.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater,

---

[5] Rule 202.17 directs that a person who is a "younger individual," has a "limited or less" education, and is "unskilled" is not disabled. 20 C.F.R. Pt. 220, App. 2.

[6] Rule 201.24 directs that a person who is a "younger individual," is "illiterate or unable to communicate in English,"and is "unskilled" is not disabled. 20 C.F.R. Pt. 220, App. 2.

94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges two disputed issues. First, Plaintiff contends that the ALJ improperly considered the opinions of his treating physicians in assessing his mental limitations.[7] Second, Plaintiff contends that the ALJ failed to consider properly the credibility of his

---

[7] Plaintiff does not contest the ALJ's findings regarding his physical impairments. (Joint Stip. at 3-4.)

subjective complaints as required by Social Security Ruling ("SSR") 96-7p.[8]  (Joint Stipulation "Joint Stip." at 3-4.)

**A.  The ALJ Improperly Considered The Opinions Of Dr. Marissa Mejia, Plaintiff's Treating Psychiatrist, and Dr. Darlington, Plaintiff's Treating Psychologist.**

Ordinarily, the opinions of a treating physician should be given great weight, if not controlling weight.[9]  *See* Social Security Ruling 96-2p; *see also* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (opinions of treating physicians are entitled to great deference).  When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); *see also* Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating doctors' opinions and relying upon Social

---

[8] Although this issue is not reached by the Court for reasons discussed *infra*, to the extent Plaintiff contends that the ALJ erred by failing to apply the factors of Social Security Ruling 96-7p, such argument is unavailing.  While Social Security Ruling 96-7p sets forth a number of factors for an ALJ to consider in assessing a claimant's credibility, it does not require an ALJ to specifically discuss and analyze each of the factors set forth therein to render a valid credibility finding.  Neither the language of this ruling nor the authority cited by Plaintiff (Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990)) suggests that the failure to do so is reversible error in and of itself.  In any event, as the resolution of the first issue may be case dispositive, the Court focuses its discussion on this issue only.

[9] The term "physician" herein includes psychologists.  *See* 20 C.F.R. § 404.1527 (defining "medical opinions" as "statements from physicians and psychologists and other acceptable medical sources," and prescribing the respective weight to be given the opinions of treating sources and examining sources).

Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled). Broad and vague reasons will not suffice for rejecting the treating physician's opinion. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989).

In a January 20, 2004 Medical Assessment Of Ability To Do Work-Related Activities (Mental), Dr. Marissa Mejia, Plaintiff's treating psychiatrist, found that Plaintiff: (1) has a **"fair" ability** (defined as a **"seriously limited" ability**) to "[f]ollow work rules," "relate to coworkers," "deal with the public," "use judgment [with] the public," and "interact with supervisors"; (2) has a **"poor or no" ability** (defined as **"no useful ability"**) to "deal with work stresses," "function independently," "maintain attention and concentration," "understand, remember, and carry out complex job instructions [or] detailed, but not complex, job instructions," and "maintain personal appearance"; and (3) a **"fair" ability** to carry out "simple job instructions," "behave in an emotionally stable manner," "relate predictably in social situations," and "demonstrate reliability." (A.R. 304-06; emphasis added.) Dr. Mejia also found that Plaintiff: "suffer[s] from depression which is affecting his concentration"; "concomitantly has anxiety and some paranoia which would interfere with concentration/attention as well"; "[is unable] to take good care of his personal appearance"; and "has psychomotor retardation, poor memory, and poor concentration." (*Id.*)

In addressing Dr. Mejia's above opinion, the ALJ stated:

> The more extreme functional limitations found by Dr. Mejia [consider Plaintiff's] substance abuse problems. She

>indicated that [Plaintiff] had poor to no ability to function in numerous domains (Exh. 12F). However, despite Dr. Rath's testimony that [Plaintiff] may meet Section 12.09[10] of the Listing of Impairments taking into account drug and alcohol abuse, without drug and alcohol abuse, no Listing was met and [Plaintiff] could perform work within the mental demands described by him.

(A.R. 15.)

Plaintiff contends that the ALJ improperly rejected Dr. Mejia's opinion regarding Plaintiff's mental residual functional capacity ("RFC") in favor of the findings made by Dr. Rath, a non-treating and non-examining medical expert and psychologist. (Joint Stip. at 5; *see* A.R. 14.) Plaintiff further argues that the "ALJ is simply wrong when he states . . . that [Dr. Mejia's] limitations are based on . . . Plaintiff's 'substance abuse problems.'" (Joint Stip. at 5; *see* A.R. 15.) Plaintiff correctly maintains that, "Dr. Mejia specifically states that Plaintiff's symptoms and limitations are due to depression [and she] does not cite any substance abuse as the cause of Plaintiff's symptoms." (Joint Stip. at 5.)

Defendant argues that the ALJ appropriately relied on the testimony of medical expert Dr. Rath in rejecting Dr. Mejia's more restrictive limitations regarding Plaintiff's ability to function in a work-related environment. Dr. Rath, who testified during the third hearing,

---

[10] Section 12.09 of the Listing of Impairments pertains to substance addiction disorders.

indicated that "12.09 has been a questionable factor," and found that Plaintiff was "moderately" impaired in performing activities of daily living, maintaining social functioning, and maintaining persistence or pace. (A.R. 401.) Dr. Rath pointed to Dr. Mejia's comment in her July 23, 2003 report that she "need[ed] to stabilize [Plaintiff's] symptoms . . . before [assessing] the permanency of [Plaintiff's condition]," as indicating that she was considering Plaintiff's alcohol and drug dependency. (A.R. 408, citing A.R. 155, 328.)

Dr. Rath concluded that Plaintiff's symptoms of poor concentration and hygiene, as observed by Dr. Mejia, resulted from Plaintiff's drug and/or alcohol abuse. (A.R. 408.) Dr. Rath based his conclusion on four documents in the record showing that Plaintiff: (1) was intoxicated when he got into a car accident in 1977 (A.R. 117); (2) tested positive for marijuana, cocaine and opiates in a July 2003 drug test (A.R. 183); (3) admitted to drinking beer at times in May 2002 (A.R. 122); and (4) admitted to drinking "1 to 4 beers every other day" in November 2002 (A.R. 160). (A.R. 402, 406.) As further support for his conclusion, Dr. Rath pointed out that the symptoms Plaintiff allegedly reported of visual hallucinations are "quite rare" absent substance abuse or brain damage and, therefore, are "most consistent with [Exhibit] 11F-10 where [Plaintiff tested positive for] cocaine and opiate[s]." (A.R. 406; citing A.R. 182-83 -- July 16, 2003 blood test showing positive results for cannaboids, cocaine, and opiates.)

Defendant's argument is unavailing for several reasons. By its plain terms, Dr. Mejia's January 20, 2004 report states that Plaintiff suffered from "depression which is affecting his concentration," but it

makes absolutely no mention of substance abuse.  (A.R. 304.)  As the record shows that Dr. Mejia treated Plaintiff numerous times from December 16, 2002 (A.R. 167), until January 20, 2004, her January 20, 2004 report should be viewed within the context of her treating relationship with Plaintiff since late 2002.  *See, e.g.*, Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)(treating physician's opinion is given greater weight, because he is employed to cure and has a greater opportunity to know and observe the patient as an individual); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)(Commissioner is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments).

    Most importantly, the opinions in Dr. Mejia's January 20, 2004 report are consistent with the observations noted in her records during this period.  In particular, Dr. Mejia's January 20, 2004 report is consistent with her July 23, 2003 medical report, which indicates that Plaintiff suffers from "major depressive disorder, recurrent, severe with psychotic features."  (A.R. 155, 328.)[11]  Although, as Defendant contends, Dr. Mejia also indicates in that same report that, "I need to stabilize [Plaintiff's] symptoms with medications first or at least try to before I can determine the permanency of [Plaintiff's] symptoms," Dr. Mejia did <u>not</u> state that his symptoms result from drug and alcohol abuse.  (*Id.*)  Instead, she concluded that Plaintiff is unable to work and that he is limited by "poor concentration and memory due to . . . psychosis and depression."  (*Id.*)

---

[11]     This medical report erroneously appears twice in the record.

This Court would have to make an illogical leap to affirm the ALJ's conclusion that Dr. Mejia contemplated that Plaintiff's mental health impairments stemmed from alcohol and/or drug abuse, because nowhere in the record does Dr. Mejia indicate any such finding or observation. Indeed, her records do not show that she ever has treated Plaintiff for drug or alcohol addiction.[12]  Therefore, the ALJ's reason for rejecting Dr. Mejia's opinions -- namely, that the limitations she found resulted from Plaintiff's drug and alcohol abuse problem -- is not legitimate. *See* Lester, 81 F.3d 81 at 832; *see also* McAllister, 888 F.2d at 602.

Moreover, the ALJ erred in ignoring competent evidence in the record regarding Plaintiff's mental health treatment to justify his RFC finding and ultimate conclusion that Plaintiff is not disabled. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(holding that it was error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion).  As Plaintiff correctly contends, the ALJ's RFC finding improperly ignores the findings of Plaintiff's treating psychologist, Dr. Darlington, that Plaintiff suffers from a "major depressive [disorder], severe [with psychotic features]," as well as the significant symptoms denoted by his Global Assessment of Functioning ("GAF") score of 46.  (Joint Stip. at 6); (A.R. 173.)  A GAF score of 46 indicates "serious  symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning

---

[12] According to this Court's review of the record, Dr. Mejia's only mention of Plaintiff's use of alcohol and drugs is a notation, in her November 25, 2002 clinical assessment, that Plaintiff reported drinking one to four alcoholic drinks "every other day" and having a past history of marijuana use with no use in the past three months. (A.R. 160.)

(e.g., few friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders Text Revision, 34 (4th ed. 2000)("DSM-IV-TR"); *see also* Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001)(GAF rating of 50 or below indicates the presence of serious symptoms among which may include the inability to work).

Although the ALJ is not obliged to give probative value to a GAF score in assessing a claimant's RFC, Dr. Darlington's assessment of Plaintiff is completely consistent with Dr. Mejia's more restrictive limitations. *Cf.* Howard v. Commissioner of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002)(noting that, although a GAF score is not essential in assessing the RFC, it "may be of considerable help to the ALJ in formulating the RFC.") And, like Dr. Mejia, Dr. Darlington did **not** state that he was basing his findings regarding Plaintiff's diagnosis and prognosis on Plaintiff's drug or alcohol abuse. (*See* A.R. 173.) In addition to improperly ignoring the findings of Dr. Darlington, the ALJ improperly ignored Dr. Mejia's June 23, 2003 report showing that Plaintiff's symptoms of depression had worsened, warranting an increase in Plaintiff's medications to treat his more severe functional limitations.[13]  (A.R. 310-12.)

Nevertheless, there has been no finding by any treating physician as to the impact of Plaintiff's drug and alcohol abuse, if any, on his RFC during this time period. Under the Social Security Regulations, a

---

[13] On June 23, 2003, Dr. Mejia increased Plaintiff's medications, Risperdal, an anti-psychotic medication, and Trazadone, an anti-depressant medication, to treat Plaintiff's worsening symptoms of depression and psychosis. (A.R. 310-12.) Plaintiff reported hearing his recently deceased grandmother's voice and claimed to receive messages from the television. (*Id.*)

13

claimant is not eligible to receive disability benefits if drug or alcohol addiction is a "contributing factor material to a determination of disability." 20 C.F.R. §§ 404.1535, 416.935. The "'key factor ... in determining whether alcoholism or drug addiction is a contributing factor material to the determination of a disability'" is "whether an individual would still be found disabled if she stopped using alcohol or drugs." Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998)(citing 20 C.F.R. § 404.1535(b)(1)).

When such a substance abuse issue exists, the ALJ must perform a two-step analysis. First, the ALJ must evaluate which of the claimant's physical and mental limitations would persist if the claimant refrained from drug and alcohol use. Second, the ALJ must determine whether the claimant's remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b), 416.935(b). It is not proper to conclude simply that substance abuse is a contributing factor material to the determination of disability without distinguishing between the substance abuse contributing to the disability and the disability remaining if the Plaintiff stopped using drugs or alcohol. Sousa, 143 F.3d at 1245 (reversing and remanding case for the ALJ to determine whether claimant's disability would have continued if she stopped using drugs and alcohol). In addition, "[i]n materiality determinations pursuant to 42 U.S.C. § 423(d)(2)(C), the claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination." Ball v. Massanari, 254 F.3d 817, 820 (9th Cir. 2001).

Plaintiff requests that the case be remanded for the ALJ to contact

Dr. Mejia for clarification of her opinion regarding whether, and to what extent, the mental limitations she found result from Plaintiff's substance abuse, rather than his depression. (*See* Joint Stip. at 6, 14.) The Court finds this request to be proper. *See* Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993)(Commissioner has an affirmative duty to develop the record, even if the claimant is represented by counsel); 20 C.F.R. §§ 404.1512(e), 416.912(e)(duty to re-contact treating physician); Thomas v. Barnhart, 278 F.3d 947, 956-57, 959 (9th Cir. 2002)(requirement in 20 C.F.R. §§ 404.1512(e), 416.912(e) that the Commissioner re-contact treating sources is triggered where the information from the treating sources is inadequate to make a determination regarding disability); *see also* 20 C.F.R. §§ 404.1519a(b), 416.919a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity or insufficiency in the evidence). Thus, on remand, the ALJ should seek clarification from Dr. Mejia and render a finding in accordance with the standards regarding the consideration of the impact of drugs and alcohol abuse in determining disability.

**B.   Remand Is Appropriate.**

In view of the ALJ's need to reassess Plaintiff's RFC as discussed above, this action must be remanded. *See* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred in rejecting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); Higbee v. Sullivan, 975 F.2d 558, 561-62 (9th Cir. 1991)(remanding case in order to develop the record); McAllister, 888 F.2d at 603 (remand appropriate to remedy

defects in the record).

## CONCLUSION

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 8, 2007

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE